We'll next hear argument in Godown v. Marshall No, that's okay. These things happen even to lawyers. No problem. I was just noting it was a nice ringtone. Mr. Zuman, you couldn't stay away. I'm glad to be here, Your Honor.  Thank you, Your Honor. Good morning. How are you? Fine, Your Honor. How are you? All right. In this case, the California Court of Appeal affirmed a sentence of a recidivist for four or five years to life. It is our position that that determination by the State Court of Appeal was not unreasonable, an unreasonable application of the facts, nor was it an unreasonable determination of the law. And, therefore, we further claim that the district court here erred in granting writ relief, and we submit that that determination by the district court should be reversed. I'd like to talk briefly about the State Court of Appeal decision that is at issue today and then explain our interpretation of the district court's evaluation of the case. In the State Court of Appeal decision, which appears in the excerpts here at page ‑‑ the relevant portion of it is page 86, the State Court of Appeal addresses the relevant Supreme Court authority in this area. Specifically, it discusses the Supreme Court's decisions in Harmelin v. Michigan and in Solon v. Helen. And it indicates a movement in the Supreme Court reflected in Harmelin in terms of the way the Supreme Court analyzes recidivism cases and cases of alleged Eighth Amendment violations. And it notes that the approach taken in Solon is no longer applied as of the time of Harmelin, and this is a decision by the State Court of Appeal in the year 2000. And it then ‑‑ that is, the State Court then reviews the petitioner's history as a recidivist, which includes numerous crimes of burglary, all of which except for the present offense involve occupied dwellings where people are present and the burglary is committed with witnesses present, either the burglary or the attempted burglary, depending upon his prior crime. And it also notes, or one can interpret from the record, that at every point in this petitioner's adult lifetime, upon being released from parole or probation and including release from prison, he promptly reoffends, that is, he commits another burglary, typically a burglary of inhabited dwelling. And so for those reasons, essentially, the State Court of Appeal finds that Supreme Court precedent does not bar imposition of California's recidivism law here. Now, when we get to the district court, as I indicated, the district court comes to a contrary conclusion. And I'd just like to point out a few aspects of that decision that I believe are worth noting. The first is there is no indication in the district court decision as to how it is that the state court is not merely incorrect but is objectively unreasonable. And as this court knows under the ADPA, it is that further standard of review that is required in a case like this. And if we read the district court's analysis, for example, we see that unlike the State Court of Appeal, the district court conducts no interpretation at all of Harmelin v. Michigan, no explanation, no accounting for how the Supreme Court interpretation of these recidivism Eighth Amendment claims changed between Solem and Harmelin. And we don't need to just take the State Court of Appeal's word for that because the Supreme Court itself says after the State Court decision in this case that there has been a difference in the way these claims are analyzed post-Solem. And they said so in Lockyer v. Andrade, and this Court has said so. So the State Court did not unreasonably decide that Harmelin represented a departure from Solem. That's the first thing. The second point I would make is the district court, I would submit, engages in some fact-finding when the court finds in effect, well, this was a de minimis burglary because no one was home at the time that this Petitioner broke into this residence, unlike his previous burglaries. The record indicates that the resident of this dwelling had died the week prior to this crime. And the record also indicates that her stepdaughter was still making arrangements to remove property from the residence. So the fortuitous fact that no one in fact was present at the moment that he elected to break into the apartment, unlike his prior crimes, is not really a point in his favor, nor is it anything that the record indicates conclusively should be credited to him. And furthermore, regardless of what he knew, and the record doesn't tell us what he knew or what he didn't know, the risk of burglary is the risk in the abstract of the potential for violence that these sorts of crimes represent. The – and furthermore, the other point I'd like to make with respect to the district court determination here is that the court makes much out of the fact that as a first offense, a secondary burglary is one year. And the court uses that to calculate various multipliers to show just how onerous and extreme the recidivism penalty in this case became. By the way, two points. First of all, back to Harmelin. Harmelin is not a recidivism case. Harmelin is a life without parole sentence for possession of cocaine. So it is difficult to square Harmelin with the district court's interpretation, and the district court made no effort to do that. But the point I would make finally about that calculation is that the district court is wrong as to the penalty in California for secondary burglary. It is not one year. It is three years. But your point, then, that you're really trying to put to us is that there is no clear framework by the Supreme Court which would suggest that the California Court of Appeals improperly applied the Supreme Court law. You are correct, Your Honor. The Supreme Court has said more than once that the only principle that emerges from these Eighth Amendment cases is the principle of gross disproportionality, but that it does not include the specific framework of Solon v. Help. I see that I have one. What is secondary burglary? It is burglary of an uninhabited dwelling. It is a burglary where there is not a victim present. There's a difference between being uninhabited and having no one present. I don't exactly know who's at home right now, but it's very well possible if somebody broke into my house right this minute, there wouldn't be anybody home. I can assure you much earlier this morning there were lots of people around. Does that turn into a secondary degree burglary because at the moment of break-in no one happens to be present? That is correct.  That is correct, Your Honor. It is unoccupied at the time of the crime, not that it is unoccupied as a fixed characteristic of the property. Okay. You are able to sit down. I'll use the remainder of my time for rebuttal. Thank you very much. Good morning, Your Honors. David Zuckman on behalf of Mr. Dale Godown. My first red brief. Your Honors, it is an incredibly rare phenomenon to have a district court grant an Eighth Amendment claim. I mean, I've searched every case decided by this Court, and it's 472 to 3. Mr. Godown is number 3. So what's the standard to review? Well, we're determining whether the district court was correct in concluding. It's a no vote? Yes, absolutely, it's a no vote. All right. So that it's incredibly rare means that demonstrates the district court was way off base or? No, the standard is exceedingly rare. Is that the point you're making? No, no, no. It's an exceedingly rare. He must have had a synapse or something. No, no. The exceedingly rare would be evidence that it doesn't happen very often. But exceedingly rare is not the same as never. Well, this guy, any time he's out, he's committing burglaries, right? He starts an 87 first-degree burglary. Five months later, another first-degree burglary. He gets six years. 1990, after he gets out, another first-degree robbery. He gets 12 years. Not a robbery. Not a robbery. Not a robbery. It was not a robbery. Well, they said robbery. It's called burglary. Don't care what it is. He got 12 years, right? He gets out October of 1998 and absconds from probation in April of 1999, another burglary. Second degree, another burglary. Now, tell me why the Eighth Amendment says that a state can't say enough. When this guy is out, he's committing burglaries. We're putting him away now. Because of solemn versus solemn. Because Mr. Godown's record is less serious than the seven felony burglaries in solemn. So solemn is your best case? It's my only case. It's not just my best case. I'm sorry. He had 12. He had seven prior felonies, several burglaries. He had a more serious record than Mr. Godown. His current offense, I cannot accept that this second-degree burglary is a terribly serious offense. This place, everybody knew there was no one home. The woman had died. Now, that's not a nice thing to do. You shouldn't break into people's homes, dead or not dead. But there was no risk of violence. The guy, you know, he has a drinking problem. Why is that the case? My mother died. My family and I spent a good deal of time in her house for weeks afterwards, you know, sorting through her things, her medicine. I'm sorry. I don't mean to be as personal. But, you know, why does the fact that the occupant, Hamster, died make this highly unlikely that nobody would be there? Well, the fact that it's unoccupied and that it was presumed that he would know it was unoccupied since this was a place he frequented and the woman he was with, the folks all knew him. He was ID'd by a neighbor who knew him. This is, I mean, from what I believe from the district court record. Well, but the woman has a stepdaughter, right? I mean, she has family. Why would he be so highly unlikely that a stepdaughter would be there? Or a stepdaughter's family, trying to source possessions. I don't know. 4.15 in the morning. I'm sorry? 4.15 in the morning. That was the time of the burglary from the probation report. You know, this is a... He's not entitled to sleep there? Well, it just makes it less likely. I can't, obviously, I can't theoretically eliminate the possibility that someone could be in that apartment. Well, he didn't much care one way or the other, did he? I mean... I mean, his prior burglaries, he marched right into people's houses when they were there. These are low... He stole $5. It doesn't matter what he stole. I mean, burglary, I believe it's not, it doesn't base on that, does it? He marched into somebody's house when somebody was there. He took $5 from his neighbor's purse. I think on two, maybe his three prior burglaries, at least two of them, he marched in when somebody was actually there. There were two attempted, which the law has always judged as less serious than completed crimes. The one completed crime was the one where he took $5 from his neighbor's purse. And the attempts, was anybody there? The probation report indicates that there were, I think, two residents. So it is said he's not particularly interested if you're there or not there. He's coming in. Unless he runs away. He's 5'4", 120 pounds. He is not an ominous monster. Let me tell you, if I woke up at 4.15 in the morning, I mean, if he was wrong about that, and somebody was in the house, and they woke up and found some guy 5'4", 115 pounds or whatever he weighs, in the dark, it would be really scary. They could have a gun. They could have a knife. I mean, the violence could easily erupt in that kind of situation. I mean, invading people's homes in the middle of the night is just one of the most invasive and dangerous. I mean, it's not like breaking into a warehouse at night, which is not a good thing. There could be people in the warehouse. Well, there could be people in the warehouse. People in the warehouse at night are usually guards, people who are there to watch out for burglars. People in a house overnight at 4.15 are usually sleeping and are counting on the privacy and security of their home to have a peaceful sleep. If you wake up with someone like that, if the stepdaughter had been there and woken up, she wouldn't have gotten over it for years afterwards. It's hard to imagine what waking up with an intruder in the house is like. I'm not arguing that these aren't crimes. I'm not saying that this does not deserve zero punishment. What I'm saying is 25 years to the rest of his life in prison, which in most cases is effectively life, is disproportionate. He seems to like it there. I hate to be cynical, but he keeps, every time he gets out, he does things that will get him buried. So it's almost like he wants to be back in prison. Well, I have spoken to Mr. Godown, and obviously this is not in the record, but he doesn't want to be there. He has told me that much that he would like to leave. Let me ask you a question. You say Solem is your only case. Correct. Do you see any big differences between your case and Solem? My case is better. Well, do you see any big differences then that I ought to really concentrate on? Yes. Well, I think that, you know, the State Court, when it cited Hammerlin, the Michigan, you know, mandatory life case, it didn't change Solem. And we know that's true because the Supreme Court told us that in Ewing and Locklear, and this Court has applied Solem post Ewing and Andrade. So we know that this gross disproportionality principle exists. It is exceedingly rare. It's very difficult to find a case that fits into that rubric. That isn't exactly what I was asking. I was asking about the facts and the circumstances of the case, because I don't believe you. I think that the area here is no clear framework, which you're relying on Solem as your best Supreme Court precedent. I am. And the argument is, is that Mr. Godown's current offense is a low-level property claim, just like Solem. In Solem, there's also several prior burglaries, seven, in fact. Mr. Godown has three. And these prior burglaries, if you look at the State Court's PSR, he gets 180 days diagnostic study. So the first judge that sees him says, you obviously have a drinking problem or maybe some mental issues. Let's figure out what's going on with you. Then he violates, you know, like five months later, he gets a three-year sentence, which is halftime, and then he gets a six-year sentence and a twelfth. At each point, he's giving the least he can. Now he gets to three strikes, and it's now essentially a life sentence. And that, for what he did, is a disproportionate punishment. But it's still a low-level property claim. And this is a very rare case, he said. It's exceedingly rare. I mean, it's... And in Solem, you're the guy, the defendant got life without possibility of parole, didn't he? Yes. And in this case, your person got 25 to life with possibility of parole? He did. And is that a significant factor? Is it significant? Yes, it does play into the analysis. Significant difference? It does play into the analysis, yes. Mr. Godin's sentence, I guess, he does have the theoretical possibility of parole. It just doesn't happen. In California, when you get three strikes, you stay in. They don't let him go. How do you distinguish Lockyer versus Andrade? Pardon me, Your Honor? How about Lockyer versus Andrade? Well, Mr. Lockyer... Mr. Andrade, unfortunately, has a... Not Mr. Lockyer. No, no. Mr. Lockyer is a fine guy. I don't mean to disperse Mr. Lockyer. Mr. Andrade had an unfortunate criminal history. He had several crimes of violence involving actual violence. And I have maintained in my papers that if you get violence, you know, you pretty much lose. He had two misdemeanor thefts. He had three residential burglaries. And he had two transportations of marijuana. He never drew blood from anybody. He never pointed a gun at anybody, best I can tell. So how is his record very different from your client's? Drug cases are, you know... And he also, as your client, escaped. You mean didn't show up for... Didn't show up to prison, got out, didn't want to do what he had to do. Similar to what your client walked away after he had all these things and was on probation, decided to run away. I think if you look at the facts of what Mr. Godin did, no one would say that 25 to life is the right sentence here. I'm not saying the state court has to let him go. But Andrade's crime is clearly less serious than your client's crime. He shoplifts some videotapes from a store. I mean, even potentially, shoplifting under any manifestation is less dangerous than breaking somebody's dwelling in the middle of the night. Under any of his manifestations. You can get shot, or you can wrestle somebody with a gun and shoot them, or get into a physical altercation, or scare somebody to death, breaking into a dwelling at night. Nothing like that happens in shoplifting. Yes, but the apartment was unoccupied because the woman had died. Nothing like that could happen at the shop. The apartment happened to be occupied, but the crime itself, which involves breaking into a dwelling at night... Dwelling, right? Well, it's dwelling. I mean, a vacant apartment is not a dwelling, as that term is ordinarily used, which means somebody lives there. Someone used to live there. I'm sorry. So is it your position that lifting $154 worth of tapes is no more dangerous than the crime your client committed? I see the facts that Mr. Godin's current offense apparently is more mitigated than Your Honor see it. I see that as a small, drunken man trying to find a place to canoodle with some woman that he had just met. It's not nice, but I don't see it as terribly dangerous or violent. I mean, I'm not going to say, Mr. Andrade, that shoplifting should get $25 a lot. I absolutely don't believe that, so I wouldn't say that. But we have it for a fact that he did, and the Supreme Court upheld it. I mean, we can't get away from that. That's true. I don't know whether any of us here agree with that ruling or disagree with it. The fact is that it is binding on us. Yes. And your position, your situation, your client's situation is better than that. Yes. Okay. Thank you. Thank you, Your Honor. Just briefly, I'd like to follow up on some of the points or some of the questions that the Court asked. First of all, and in response to the Petitioner's argument, to say that the case turns on Solon v. Helm, the Supreme Court has said in Andrade that Solon v. Helm is not the standard at this point. So I think to put all one's eggs in that basket on its face is problematic. And Blocker v. Andrade is a sentence of twice this case for the crime of stealing two videotapes. This Petitioner. Is that twice the sentence? Andrade received a 50-year-to-life sentence. And this is a 25-year-to-life case. That is, you get down cases of 25 years to life. Oh, I see. It's two consecutive 25 years. Exactly. Exactly. So. I didn't catch. Okay. It's consecutive. It is a harsher sentence. Does it serve a 25 years to life and then 25 more years to life? Or is it 25 plus 25? I think it's 50 to life, Your Honor. So he doesn't become. I wasn't just kidding. No, I understand. The way it's done is you add up the two numerical sentences before he becomes even eligible for parole. I think the parole eligibility is calculated based upon 50 years. And when within that 50 years he becomes eligible, I don't frankly know. But it is twice the sentence. He can get credits? There is a. . . Under 50? There is a. . . You're not strictly serving 50 years before you're eligible for parole. Well, whatever the number is. Yes. The numerical part of the two sentences gets stacked. That's my understanding. Minus whatever credits before you even become eligible. That's correct. Okay. So it is a harsher sentence ultimately, doubly harsh than in this case. And the point ultimately. . . will see the light of day if, you know, absent any federal relief, right? I don't know if Mr. Goodown will see the light of day because, for example, the Supreme Court has said repeatedly, and in particular when distinguishing Solem, that the possibility of parole is a distinguishing factor in the case. Mr. Goodown is certainly in the middle, hopefully, of his life. But whether or not he will eventually receive parole, I don't know. But in terms of many of the points raised, I would just conclude by pointing out that he's not being sentenced by this court. And these mitigating factors that are asserted to this court were appropriately made to a sentencing court. And the only question at this point is whether or not the State Court of Appeal acted so outside the realm of rationality, really, that it entitles this defendant to habeas relief and certainly Solem v. Helm is a slender thread to base that claim on. Thank you. Thank you.
judges: Kozinski, Fernandez, Smith N. R.